UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| GUILLERMO LIZARRAGA,<br><br>Plaintiff,<br><br>vs.<br><br>KATHRYN K. MAGGI, et al.,<br><br>Defendants. | CASE NO. 10CV2299 DMS RBB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AS TO THE INDIVIDUAL DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND AS TO THE UNITED STATES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)** |
|---|---|

Pending before the Court is Defendants' motion to dismiss Plaintiff's Complaint as to the Individual Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) and as to the United States pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, the motion to dismiss is **granted**.

**I.**

**BACKGROUND**

This matter arises out of the decision by United States Customs and Border Protection ("CBP")[1] to deactivate Plaintiff Guillermo Lizarraga's electronic entry filer code. Plaintiff is a

---

[1] The parties agreed to substitute the United States for CBP as a Defendant. The United States, not a federal agency, is the proper defendant in a claim under the Federal Tort Claims Act. (Doc. 8.)

1  customs broker in Otay Mesa, California and licensed by CBP to conduct customs activities in San
2  Diego. (Compl. ¶ 2.) In the latter part of October 2001, Plaintiff met with customs officials, including
3  Defendant Kathryn Maggi ("Maggi")[2], to discuss the illegal drugs found in one of Plaintiff's import
4  shipments. (*Id*. at ¶¶ 8-10.) Plaintiff was accused of aiding and abetting in the shipment of the illegal
5  drugs, and from January 8, 2002 until May 24, 2002, his business was audited by CBP. (*Id*. at ¶ 12.)
6  Plaintiff alleges that during the audit, Maggi detained 27 of Plaintiff's clients' import shipments and,
7  without legal cause, ordered their return to Mexico, threatening the existence of Plaintiff's business.
8  (*Id*. at ¶¶ 13-14.) Based on the findings of the audit, CBP assessed a $30,000 penalty against Plaintiff
9  for infractions of 19 C.F.R. § 1641, the most serious of which was the conducting of customs business
10 as a corporation without a corporate license and permit from CBP. (*Id*. at ¶ 19.) CBP mitigated the
11 penalty to $16,750, which Plaintiff paid on June 30, 2006. (*Id*. at ¶ 20.)

12 On May 30, 2007, Maggi inspected Plaintiff's business to determine if Plaintiff had corrected
13 the infractions found in the foregoing audit. (*Id*. at ¶ 21.) Plaintiff believed Maggi's audit report
14 contained unfounded charges and responded to them in a letter dated October 31, 2007. (*Id*. at ¶ 22.)
15 CBP revoked Plaintiff's CTPAT[3] privileges on or about April 2008, and subsequently revoked
16 Plaintiff's SENTRI[4] privileges on July 17, 2008. (*Id*. at ¶ 23.) Although Plaintiff requested the reasons
17 for cancellation of these privileges, CBP refused to provide them. (*Id*. at ¶ 26.) Plaintiff believes that
18 Defendants Maggi and Rosa Hernandez ("Hernandez")[5] initiated and requested the termination of
19 these privileges solely to unjustifiably injure him. (*Id*. at ¶ 27.) From October 31, 2007, until early
20 October 2008, Plaintiff sought to meet with Maggi and Hernandez in order to make an oral
21 presentation concerning the May 30, 2007 audit. (*Id*. at ¶¶ 29, 30.) However, when Plaintiff arrived
22 at the meeting in early October, 2008 with his attorney, Hernandez immediately cancelled the meeting.
23 (*Id*. at ¶ 30.)

---

[2] Maggi is the Entry Branch Chief of the Otay Mesa Commercial Facility. (*Id*. at ¶ 3.)

[3] CTPAT is a Customs program that helps maintain the security of import transactions against terrorists and drug smugglers. (*Id*. at ¶ 24.)

[4] SENTRI allowed Plaintiff to return to the United States from Mexico in a special vehicle lane without having to wait in long lines with other vehicles. (*Id*. at ¶ 25.)

[5] Hernandez is the Port Director of Customs at Otay Mesa, and Maggi's supervisor. (*Id*. at ¶ 4.)

Plaintiff alleges that at the time of the scheduled meeting, Maggi and Hernandez had already conspired to suspend Plaintiff's filer code without due process. (*Id*. at ¶ 31.) Further, Plaintiff alleges that on an unknown date in October 2008, Hernandez requested that Defendant Gurdit Dhillon ("Dhillon")[6] approve her request that Plaintiff's filer code be revoked or suspended without due process, and that on October 28, 2008, Dhillon requested the same from Defendant Daniel Baldwin ("Baldwin", and Defendants Maggi, Hernandez, Dhillon, and Baldwin, collectively, the "Individual Defendants").[7] (*Id*. at ¶¶ 32-33.) Plaintiff alleges that in order to justify their request, Maggi and Hernandez asserted malicious and false accusations that Plaintiff was a drug smuggler, and that Dhillon and Baldwin made no independent inquiries of the facts supporting the request presented to each of them. (*Id*. at ¶¶ 34, 36, 43-44.) Finally, by a letter dated November 4, 2008, Baldwin approved Dhillon's request, and in a letter from Hernandez to Plaintiff dated November 10, 2008, Plaintiff was informed that his filer code would be deactivated on November 14, 2008 without further administrative proceedings. (*Id*. at ¶¶ 35, 39.)

On November 14, 2008, Plaintiff filed an action in the United States Court of International Trade ("CIT") seeking a restraining order to prevent the suspension of his filer code. (*Id*. at ¶ 40.) The CIT granted the restraining order, and on October 4, 2010, the Court accepted CBP's April 23, 2010 Confession of Judgment, which ended the litigation. (*Id*. at ¶¶ 41-42.)

Plaintiff claims that his filer code is a valuable property right, and that Maggi and Hernandez knew that suspending Plaintiff's filer code was equivalent to terminating his business. (*Id*. at ¶¶ 31, 56.) In support of this claim, Plaintiff notes two previous instances in which Maggi and another Port Director suspended the filer code of other Customs brokers, which led to the closing of those businesses. (*Id*. at ¶¶ 37-38.)

Plaintiff alleges that Maggi discriminated against him because of Plaintiff's Mexican ethnicity, in violation of the Fifth Amendment. (*Id*. at ¶ 48.) He claims that there were other Customs brokers who conducted Customs business without permission from CBP, but did not face similar penalties as

---

[6] Dhillon was the CBP Director of Field Operations, and supervised Customs operations in San Diego. (*Id*. at ¶ 5.)

[7] Baldwin is the Assistant Commissioner of International Trade of CBP at Washington D.C., who Plaintiff alleges approved and placed his final imprimatur on the civil rights violations. (*Id*. at ¶ 6.)

those faced by Plaintiff. (*Id*. at ¶¶ 45, 46.) Plaintiff further alleges that the suspension of his filer code without a hearing or due process, the failure by Dhillon and Baldwin to make independent investigations of the accusations against Plaintiff, and the alleged approval of the acts by CBP as the employer of the Individual Defendants all violated the Fifth Amendment. (*Id*. at ¶¶ 52, 57-59.) As a result of these allegedly unlawful acts of the Defendants, Plaintiff claims: that his customs business suffered serious financial losses, compelling him to lay off half of his staff and close an office; that his reputation in the customs brokerage and import community suffered setbacks; and that he and his family suffered depression, physical ailments, and loss of income. (*Id*. at ¶¶ 61-64.)

Plaintiff filed a Complaint in this action on November 8, 2010. (Doc. 1.) In the Complaint, Plaintiff claims Fifth Amendment due process violations. He brings a *Bivens* claim against the four Individual Defendants, and a claim against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-80. On March 31, 2011, Defendants filed the instant motion to dismiss Plaintiff's Complaint. (Doc. 9.) Plaintiff filed an opposition to the motion to dismiss on May 12, 2011 (Doc. 11), and Defendants filed a reply on May 20, 2011. (Doc. 12.)

## II.

## LEGAL STANDARD

A party may move to dismiss a claim under Rule 12(b)(6) if the claimant fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Federal Rules require a pleading to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court, however, recently established a more stringent standard of review for pleadings in the context of 12(b)(6) motions to dismiss. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). The reviewing court must therefore "identify the allegations in the complaint that are not entitled to the assumption of truth" and evaluate "the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.

Rule 12(b)(1) allows a party to move to dismiss a claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A pleading must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed. R. Civ. P. 8(a)(1). Because "Federal Courts are courts of limited jurisdiction . . . having only the authority to decide cases that the Constitution and Congress have empowered them to resolve," *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008), a failure to plead a basis for federal jurisdiction is fatal to an action. A court must dismiss an action if it determines, at any time, that it lacks such jurisdiction. Fed. R. Civ. P. 12(h)(3). Further, because of its importance, parties may not waive the requirement of subject-matter jurisdiction. *See Guzman-Andrade v. Gonzales*, 407 F.3d 1073, 1077 (9th Cir. 2005).

### III.

### DISCUSSION

**1.   *Bivens* Claim Against the Individual Defendants**

    **A.   Section 513 Immunity for Customs Officers**

Section 513 of the Tariff Act of 1930 ("Section 513") provides in pertinent part, "[n]o customs officer shall be liable in any way to any person for or on account of . . . any other matter or thing as to which any person might under this chapter be entitled to protest or appeal from the decision of such officer." 19 U.S.C. § 1513(3). The parties agree that the immunity afforded to customs officers under this section is limited to encompass only those "decisions or actions" that a person is entitled to protest or appeal. (Opp. at 2; Reply at 2.) The parties disagree, however, about the scope of the decisions or actions that can be protested or appealed. Plaintiff argues that the Individual Defendants' decision to temporarily suspend his entry filer code on November 14, 2008 was not a decision he was entitled to protest or appeal within the meaning of Section 513. Specifically, Plaintiff contends that the only

1 protestable or appealable decisions are those enumerated in Section 514.[8] (Opp. at 2.) The Individual
2 Defendants, on the other hand, argue that rules of statutory interpretation and the undisputed fact that
3 Plaintiff already protested CBP's decision in the CIT show that Plaintiff's interpretation of the statute
4 should be rejected. (Reply at 3.) The Court is persuaded by the Defendants' argument, and believes
5 that the inquiry as to this question "begins and ends with the text" of Section 513. *Hui v. Castaneda*,
6 ___ U.S. ___, 130 S. Ct. 1845, 1850 (2010).

7 The Supreme Court recently held in *Hui* that Section 233(a) of the Public Health Service Act
8 ("PHSA")[9] grants broad immunity to Public Health Service personnel from *Bivens* actions. *Hui*, 130
9 S. Ct. at 1848. The Court noted that "[t]he *breadth* of the words 'exclusive' and 'any' support[ed] this
10 reading, as [did] the provision's inclusive reference to *all* civil proceedings arising out of the same
11 subject-matter.'" *Id.* at 1852 (emphasis added). Further, "in any case of statutory construction, our
12 analysis begins with the language of the statute . . . . And where the statutory language provides a clear
13 answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 52 U.S. 432, 438 (1999)(citation
14 omitted). Finally, statutes must be interpreted as a whole, "giving effect to each word and making
15 every effort not to interpret a provision in a manner that renders other provisions of the same statute
16 inconsistent, meaningless or superfluous." *United States v. Harrell*, 637 F.3d 1008, 1010 (9th Cir.
17 2011)(citation omitted).

18 Similar to Section 233(a) of the PHSA, Section 513(3) of the Tariff Act is written in broad
19 terms: customs officials are granted immunity from liability in "*any way* to *any person* . . . on account
20 of *any other matter* . . . ." 19 U.S.C. § 1513(3)(emphasis added). The breadth of the word 'any', as
21 well as the word's frequent appearance in the provision, support an interpretation that grants broad
22 immunity to customs officials. With this interpretation in mind, the decisions that a person is entitled
23 to protest "under this chapter" are interpreted with a broad scope, as well. "Under this chapter" refers
24 to Chapter 4 of Title 19, the entirety of the Tariff Act of 1930. As noted by Defendants, Section 484,

---

26 [8] The portion of Section 514 on which Plaintiff relies provides seven categories of decisions of the Customs Service which may be protested. 19 U.S.C. § 1514(a).

28 [9] Section 233(a) provides in relevant part that "the remedy against the United States provided by sections 1346(b) and 2672 of title 28 . . . for damage for personal injury . . . resulting from the performance of medical . . . or related functions . . . by any commissioned officer or employee of the Public Health Service . . . shall be exclusive of any other civil action or proceeding . . . ." 42 U.S.C. § 233(a).

which governs the electronic filing of documentation with CBP, is located in Chapter 4. In accord with Plaintiff's argument, Section 514 lists decisions of customs officers that may be protested. However, in light of the broad reading of Section 513, Plaintiff's argument that the decisions listed in Section 514 are the *only decisions* that may be protested within the meaning of Section 513 calls for a reading of the statute that is too restrictive. Plaintiff's interpretation of Section 513 would indeed render the words "under this chapter" superfluous. If Section 514 did, as Plaintiff argues, enumerate the only decisions that were protestable, it is likely that Congress would have specifically so indicated in Section 513, rather than use the words "under this chapter." This conclusion further follows from the fact that Section 514 itself explicitly references specific sections of Chapter 4 that are not subject to its terms. The scope of protestable decisions within the meaning of Section 513 is therefore broad, is not limited by Section 514, and encompasses decisions related to entry filer codes.

The procedural posture of Plaintiff's case lends further support to the conclusion that CBP's decision to suspend his filer code was a protestable decision within the meaning of Section 513. Plaintiff sought, and obtained, relief in the CIT in the form of a restraining order. (Compl. ¶¶ 40-41.) Further, Plaintiff was able to litigate the matter, which concluded in Plaintiff's favor after CBP's October 4, 2010 confession of judgment. (*Id.* at ¶ 42.) Accordingly, Section 513 grants the Individual Defendants immunity from Plaintiff's *Bivens* claim. However, even if Section 513 did not provide the Individual Defendants with immunity, the claims against them would nonetheless be subject to dismissal for the reasons discussed below.

**B.**   ***Wilkie* Analysis**

An analysis of Plaintiff's *Bivens* claim under the *Wilkie* test provides a similarly compelling reason for this Court to dismiss his Complaint against the Individual Defendants. In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Western Radio Serv. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009)(quotation omitted). The Court in *Bivens* allowed a damages action against individual federal officials for violating the Fourth Amendment. *Bivens v. Six Unknown Federal Agents*, 403 U.S. 388 (1971). Since that decision, however, *Bivens* actions have been recognized in only two additional areas: for a violation of the Due Process Clause in an

employment discrimination case, *Davis v. Passman,* 442 U.S. 228 (1979), and for a violation of the Eighth Amendment by prison officials, *Carlson v. Green*, 446 U.S. 14 (1980). The scope of proper *Bivens* actions is thus severely limited, "and in most instances [the Supreme Court] ha[s] found a *Bivens* remedy unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). One explanation for this result is the Supreme Court's increasing scrutiny of congressional intent: whether Congress intended to create a new *Bivens* remedy under particular circumstances. *Western Radio*, 578 F.3d at 1119.

The Court in *Wilkie* created a two-step analysis to determine the appropriateness of finding a *Bivens* remedy. *Wilki*e, 551 U.S. at 550. First, the Court must determine "whether any alternative, existing process for protecting [plaintiff's] interests" is available. *Id*. The existence of such an alternative remedy leads to the inference "that Congress expected the Judiciary to stay its *Bivens* hand and refrain from providing a new and freestanding remedy in damages." *Western Radio*, 578 F.3d at 1120. However, if it is unclear whether Congress intended an alternative remedy to take the place of an implied right of action, the Court looks to the second step and determines "whether there nevertheless are factors counseling hesitation" against creating such an action. *Id*. (quotation omitted).

In addressing the initial step of the *Wilkie* analysis, it appears that Plaintiff had two alternative processes to protect his interests, one of which Plaintiff in fact used. The first, which Plaintiff did not utilize, was review of the CBP's actions under the Administrative Procedure Act ("APA"). The APA provides for judicial review of agency actions.[10] The Ninth Circuit recently held that the APA's scheme for judicial review "constitutes an alternative, existing process," and thus refused to recognize a *Bivens* action in a claim against the United States Forest Service for alleged Due Process violations.[11] *Western Radio*, 578 F.3d at 1122. The APA provides an adequate alternative to a *Bivens* remedy in the present case, as well. Plaintiff was notified by CBP on Monday, November 10, 2008, that his filer code would be suspended on Friday, November 14, 2008. (Compl. ¶¶ 35, 39.) Plaintiff could have

---

[10] The relevant portion of the APA is codified in 5 U.S.C. § 702, which provides in pertinent part, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

[11] The *Western Radio* court noted that *Wilkie* itself, although it did not so expressly hold, gave a strong indication that the APA constitutes an alternative, existing process and thereby precludes *Bivens* claims.

sought immediate relief from CBP's November 10 decision in the District Court, as it was a final agency action subject to review under the APA.

Rather than taking this available route, however, it appears that Plaintiff waited until November 14 to avail himself of the second alternative process: an action for an injunction in the CIT pursuant to the Tariff Act. The Ninth Circuit has held that the Tariff Act's remedial scheme is sufficiently adequate to preclude a *Bivens* action. *Libas, Ltd. v. Carillo*, 329 F.3d 1128, 1130-31 (9th Cir. 2003). Although *Libas* involved a challenge to CBP's classification of goods, *id*. at 1130, the manner in which the Tariff Act contemplates challenges to decisions regarding entry filer codes is substantially similar. Most notably, in either circumstance, the Tariff Act confers jurisdiction on the CIT to hear a plaintiff's claim.[12] The Tariff Act's function as an alternative, viable process for Plaintiff to protect his interests is made more apparent when considering that Plaintiff not only used the Tariff Act's remedial scheme, but ultimately prevailed before the CIT, as well. (*See* Compl. ¶ 42.)

Nonetheless, Plaintiff argues that the two remedies available to him were inadequate to redress the constitutional harms he allegedly suffered, and that the Court should thereby recognize a *Bivens* action for damages. (Opp. at 3.) In support of his argument, Plaintiff claims that, just like the situation of the *Bivens* plaintiff, his situation is "damages or nothing." *Id*. The Court disagrees. For the *Bivens* plaintiff, an action for damages was truly the only avenue for relief; an injunction provides no relief for one who has already been subjected to an unreasonable search and seizure by federal agents in violation of the Fourth Amendment. *See Bivens*, 403 U.S. at 409-10 (Harlan, J., concurring). In contrast, the restraining order that Plaintiff obtained effectively prevented further suspension and revocation of his entry filer code. Courts have held that even when the available statutory remedies do not provide *complete* relief, "[s]o long as the plaintiff has an avenue for *some* redress," a *Bivens* remedy is precluded. *Western Radio*, 578 F.3d at 1120 (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001)(emphasis added)). It is evident that the remedial schemes under the APA and the Tariff Act provided Plaintiff with avenues for *some* redress, which is sufficient to preclude a *Bivens* remedy.

It is not necessary for the Court to look to the second step of the *Wilkie* analysis because Congressional intent under the present circumstances is sufficiently clear. However, the Tariff Act's

---

[12] The CIT had jurisdiction over Plaintiff's claim under 28 U.S.C. § 1581.

broad grant of immunity to customs officers, as discussed above, is likely the kind of factor that counsels hesitation against granting a judicial remedy.

For the above reasons, this Court refrains from recognizing a *Bivens* action against the Individual Defendants. Accordingly, because Plaintiff has failed to state a claim upon which relief can be granted as to the Individual Defendants, Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted.

## 2.     **FTCA Claim against the United States**

Under the FTCA, private parties are authorized to bring claims against the United States for certain torts committed by federal employees. 28 U.S.C. §§ 1346(b), 2401(b), 2671-80. Before instituting an action against the United States for money damages, however, the FTCA requires that a claimant first file an administrative claim with the appropriate agency. 28 U.S.C. § 2675(a);[13] *McNeil v. United States*, 508 U.S. 106, 107 (1993). It is noted that the underlying purpose of the administrative claim, or 'exhaustion,' requirement, is to give federal agencies "a fair opportunity to investigate and possibly settle the claim before the parties must assume the burden of costly and time-consuming litigation." *McNeil*, 508 U.S. at 111-12; *see also Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir. 1995)(noting that the Act gives federal agencies the opportunity to resolve the claim). Thus, the prevailing view of the Ninth Circuit is that the administrative claim requirement is satisfied by "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Burns v. United States*, 764 F.2d 722, 724 (9th Cir. 1985)(citation omitted).

Plaintiff makes two arguments in support of his assertion that he fulfilled the administrative claim requirement. First, Plaintiff contends that his two letters dated November 11, 2008, requesting a two-week respite before suspension of his filer code, fulfill the administrative claim requirement. (Opp. at 6.) Second, Plaintiff argues that his action in the CIT for a restraining order also satisfies this requirement. (*Id.*)

---

[13] Section 2675(a) provides, in part: "(a) An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."

In light of the 'strict' nature of the administrative claim requirement, as well as its underlying purpose, both of Plaintiff's actions are insufficient. Plaintiff does not allege that his letters to Hernandez sufficiently described his injury to CBP, or that his letters contained a sum certain damages claim. Further, although Plaintiff's letters might have been *a step* toward fulfilling the requirement, Section 2675 requires a Plaintiff to *exhaust* his remedies with the appropriate agency before initiating a claim against the United States. *See* 28 U.S.C. § 2675(a). Finally, Plaintiff's action in the CIT led directly to litigation of the matter. This action runs contrary to the purpose of Section 2675, as it precluded the possibility of avoiding the burdens of litigation. Thus, this action cannot be an "administrative claim" within the meaning of the Act. Nonetheless, Plaintiff argues that the United States has waived the administrative claim requirement because the Defendant did not seek dismissal of the earlier CIT action on that ground. (Opp. at 6.) The Court is not persuaded by this argument. The administrative claim requirement speaks to the subject matter jurisdiction of this Court and cannot be waived. *See Burns*, 764 F.2d at 724.

Plaintiff's actions do not satisfy the administrative claim requirement and Defendant United States has not waived this requirement. Accordingly, this Court lacks subject matter jurisdiction to hear this claim, and Defendant's motion to dismiss pursuant to Rule 12(b)(1) is granted.

### IV.

### CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Plaintiff's Complaint as to the Individual Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) and as to the United States pursuant to Federal Rule of Civil Procedure 12(b)(1) is **granted**.

**IT IS SO ORDERED.**

DATED: July 6, 2011

_____
HON. DANA M. SABRAW
United States District Judge